UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| PAUL PIRO | CIVIL ACTION NO. 11-2049 |
| VERSUS | JUDGE ROBERT G. JAMES |
| NEXSTAR BROADCASTING, INC., ET AL | MAG. JUDGE KAREN L. HAYES |

RULING

    This action was brought by Plaintiff Paul Piro ("Piro") against Defendants Nexstar Broadcasting, Inc. ("Nexstar") and Guardian Life Insurance Corporation of America ("Guardian") (collectively, "Defendants"). Piro has raised claims based on the denial of long-term disability benefits.

    Pending before the Court are Motions for Summary Judgment filed by Nexstar [Doc. No. 54] and Guardian [Doc. No. 55]. For the following reasons, the Motions are GRANTED.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

    Piro was employed by Nexstar from June 1996 to July 2011. On January 1, 2011, Guardian offered a group insurance policy to Nexstar employees, which provided disability insurance coverage to eligible participants. Both short-term disability ("STD") and long-term disability ("LTD") coverage was available.

    Premiums for the STD plan were paid by Nexstar. However, enrollment in the LTD plan was optional, and monthly premiums were deducted from the employee's wages. Guardian offered LTD coverage to Nexstar employees beginning on January 1, 2011. Any Nexstar employee who sought to enroll in the LTD plan was required to do so by February 2, 2011. If an employee did not enroll within the first 31 days, enrollment was subject to the discretion of

Guardian. An employee was required to submit evidence of insurability and receive Guardian's written approval before coverage commenced.

Piro submitted an application on March 1, 2011. On March 11, 2011, Guardian sent a notice to Piro requesting evidence of insurability. Piro never responded to that notice, and Guardian never issued written approval to Piro. However, Nexstar inexplicably began deducting LTD premiums from Piro's wages, a practice that continued through June 10, 2011.[1] After Piro instituted this action, Nexstar refunded all LTD premiums collected from Piro.

On June 7, 2011, Guardian received Piro's claim for STD benefits. Guardian later received an attending physician's statement of disability stating that Piro became totally disabled as of June 14, 2011. Guardian determined that Piro was entitled to STD benefits through December 9, 2011, but was not entitled to LTD benefits because he was not enrolled in the LTD plan.

Piro's employment with Nexstar officially ended on July 1, 2011. On that date, Piro and Nexstar entered a "Severance Agreement and General Release" (the "Release"), which released Nexstar and its employee benefit plans and administrators of any and all claims in exchange for severance pay of $5,712.00.

On October 20, 2011, Piro filed this action in the Fourth Judicial District Court. Defendants removed the action to this Court on the basis of federal question jurisdiction pursuant to ERISA preemption, as well as diversity jurisdiction. On January 27, 2012, Defendants filed Motions to Dismiss for failure to exhaust the administrative remedies provided by the Plan.

On June 8, 2012, this Court entered a Ruling [Doc. No. 43] and Judgment [Doc. No. 44],

---

[1] Nexstar neither acknowledges nor denies that these deductions occurred.

granting Defendants' Motions to Dismiss without prejudice. However, at that time, Piro filed an Amended Complaint [Doc. No. 42], asserting a detrimental reliance claim against Nexstar. The Court stayed the matter for seven months pending Piro's exhaustion of administrative remedies and ordered him to file a status report by January 8, 2013.

After the January 8, 2013 deadline passed without any filing, the Court contacted Piro's counsel. The parties filed multiple status reports [Doc. Nos. 46, 49, 51, 52], and a status conference was held before Magistrate Judge Karen L. Hayes [Doc. No. 50]. On the basis of the representations made in the status reports and during the status conference, this Court ordered the stay lifted on March 12, 2013, and invited the parties to file dispositive motions [Doc. No. 53].

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard of Review

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012) (citing *Celotex Crop. v. Catrett*, 477 U.S. 317, 323 (1986)). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

3

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *ACE Am. Ins. Co*, 699 F.3d at 839. The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255.

  **B.** **Piro's Claims Against Nexstar**

Most claims against Nexstar were dismissed without prejudice by this Court on June 8, 2012 [Doc. Nos. 43, 44]. However, in his Amended Complaint, Piro added a claim for detrimental reliance. Piro contends that he relied on the fact that Nexstar was deducting LTD premiums from his wages as evidence that he had properly enrolled in the LTD plan, and no further action was necessary for enrollment.

The merit of Piro's claim turns on the Release agreement he signed when his employment ended. Pursuant to the Release, Piro agreed to "knowingly and voluntarily release and forever discharge Nexstar Broadcasting Group, Inc, . . . of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against the Releasees as of the date of execution . . . ." The parties signed the agreement on July 1, 2011, Piro's last day of employment with Nexstar. In consideration, Piro received a sum of $5,712.00. He was given an additional seven days to revoke his acceptance of the agreement, and he reaffirmed his acceptance on July 8, 2011.

Piro's sole argument is that the Release is not enforceable because it is a contract of

adhesion. "Generally speaking, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party." *Velazquez v. Brand Energy & Infrastructure Servs, Inc.*, 781 F. Supp. 2d 370, 376 (W.D. La. 2011) (quoting *Rogers v. Brown*, 986 F. Supp. 354, 359-60 (M.D. La. 1997)). A contract is one of adhesion when either its form, print, or unequal terms call into question the consent of the non-drafting party and it is demonstrated that the contract is unenforceable, due to lack of consent or error, which vitiates consent. *Aguillard v. Auction Mgmt Corp.*, 2004–2804 (La. 6/29/05); 908 So.2d 1, 17. Even if a contract is standard in form and printed in small font, if it does not call into question the non-drafting party's consent, there is no adhesion. *Velazquez*, 781 F. Supp. at 377.

      Here, there is no indication that Piro did not freely consent when he signed the Release. The Release was standard in form but was not printed in small font. In fact, much of the text was in bold. The Release advised Piro to consult with an attorney before signing. Piro had up to 45 days to consider the Release before signing. Once he signed the Release, Piro had an additional seven days to revoke his acceptance.

      Piro argues that the Release is invalid because of its "grossly unequal" terms. The terms were offered on a take-it-or-leave-it basis, and if Piro did not sign the Release, he would not receive his severance pay. However, by definition, severance pay is the consideration received in exchange for giving up something. Piro received $5,712.00 in exchange for waiving any causes of action he may have against Nexstar. He could have declined the severance pay and, instead, pursued whatever claims he believed he had against Nexstar. In accepting the severance pay, Piro also accepted the risk that he waived any present and future claims against Nexstar.

Because Piro has raised no persuasive evidence to the contrary, he has not raised a genuine dispute of material fact as to Nexstar's liability.

### C. Piro's Claims Against Guardian

Piro's Amended Complaint raised only a detrimental reliance claim, which is alleged against Nexstar. Thus, it appears that all claims against Guardian have already been dismissed by the Court without prejudice because of Piro's failure to exhaust his administrative remedies. However, in an abundance of caution, Guardian brings its Motion for Summary Judgment.

First, it is clear that Piro never enrolled in Guardian's LTD plan. Piro did not enroll within 31 days of becoming eligible for coverage on January 1, 2011. When he attempted to enroll after the open period, Piro neither submitted evidence of insurability nor obtained written approval from Guardian to enroll. Piro presented no evidence that Guardian received any LTD premium payments from Nexstar. Thus, he is not entitled to LTD benefits from Guardian.

Second, Piro waived any rights he had against Guardian when he signed the Release. The agreement states that Piro "knowingly and voluntarily released and forever discharged Nexstar Broadcasting Group, Inc, . . . and their employee benefit plans and programs and their administrators and fiduciaries . . . of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against the Releasees as of the date of execution . . . ." Guardian is an employee benefit plan or program administrator. Piro makes no argument that Guardian falls outside the scope of the Release. Thus, when Piro signed the Release, waiving his claims against Nexstar, he also waived any claims against Guardian.

Finally, even after a lengthy stay, Piro still has not exhausted his administrative remedies. Guardian's policies have specific procedures for making a claim and appealing an adverse

decision. Piro's own affidavit is ambiguous at best and intentionally evasive and misleading at worst. Piro simply states that he was informed that he "would have to demonstrate [his] insurability before [he] could apply for these benefits," and because he was already disabled, "it was impossible to demonstrate insurability." Piro makes no affirmation that he exhausted his remedies, appealed any decision, or made any effort to resolve this dispute through Guardian's administrative procedure, even though this Court ordered him to do so.

Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss an action for want of prosecution or failure to comply with a court order. Piro has made no effort to pursue his claims since the June 6, 2012 stay order. Thus, dismissal is proper on these grounds, as well as the merits.

Piro has not raised a genuine dispute of material fact for trial as to Guardian's liability, and he has failed to exhaust his administrative remedies.

### III. CONCLUSION

For the foregoing reasons, Defendants Nexstar Broadcasting, Inc.'s and Guardian Life Insurance Corporation of America's Motions for Summary Judgment [Doc. Nos. 54, 55] are GRANTED, and Plaintiff Paul Piro's claims are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 10th day of June, 2013.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE